SOUTHERN RAILWAY COMPANY *v.* GARDNER.

1. A petition, in a suit against a railroad company, which alleged, that the goods of the plaintiff had been delivered to another carrier, who, in turn, delivered them to the defendant, and that the time consumed in the transportation from the initial point to destination was so unreasonable that the goods were damaged in consequence of the delay, and which in effect alleged that the defendant company was the last of a line of connecting carriers, but did not allege that the delay occurred upon the line of the defendant, or that the goods were received by it in good order, was defective, whether it be treated as an attempt to set forth a cause of action under the common law, or a cause of action upon the statutory liability imposed upon the last carrier in a line of connecting carriers. However, such petition was amendable by distinctly alleging that the defendant was the last of a line of connecting carriers, and that it re-

ceived the goods as in good order; and when so amended the petition set forth a cause of action.

2. The fact that a station agent of a railroad company persuaded the consignee to receive goods which were in a damaged condition, and to pay the freight on the same, does not render the company liable for damages, when it would not be otherwise responsible, unless it appears that the agent was authorized, on its behalf, to assume such liability. It is not within the scope of the authority of a station agent to bind his company, under such circumstances, for a liability that does not exist.

3. While the evidence is not altogether satisfactory, there was at least some evidence upon which the finding complained of could have been based; and the judgment will not be reversed upon the ground that such finding was contrary to the evidence.

Submitted July 18, 1906.—Decided January 16, 1907.

Action for damages. Before Judge Reagan. Henry superior court. October 19, 1905.

Gardner sued the Southern Railway Company, alleging that the defendant had damaged him by its failure to deliver, within a reasonable time, a car-load of corn, purchased of Brooke, in Memphis, Tennessee. The corn was delivered to the Kansas City, Memphis & Birmingham Railroad Company, at Memphis, which issued its bill of lading on March 14, 1903, to Brooke, who indorsed it over to the plaintiff. The bill of lading stated that the corn was in apparent good order. It was understood, at the time the corn was received, that it was to be shipped from Birmingham, Ala., to Locust Grove, Ga., over the line of the defendant, that being the only line over which it could be transported to Locust Grove. The car was in transit from March 14, 1903, to April 3, 1903, when it arrived at Locust Grove, and this was an unreasonable length of time for its transportation from the initial point to destination, a reasonable time for such transportation being five days. When the corn arrived at Locust Grove it was in a damaged condition, being heated and having sprouted, and being unfit for use other than as feed for hogs; this condition being brought about by the unreasonable delay in transportation. When plaintiff was notified of its arrival at Locust Grove he declined to accept it, but, after a lapse of five days, was persuaded by the station agent of the defendant to accept the corn and dispose of it to the best advantage and make his claim against the railroad for damages. He sold it for the highest price possible, and, on account of the damaged condition, sustained loss in the amount sued for. To this petition

the defendant filed a general demurrer, and also a special demurrer upon the ground that it .did not appear, from the petition, that the injury occurred after the defendant had received the corn, and also that it did not appear that the defendant had ever entered into a contract for the transportation of the corn. The court overruled these demurrers, and the defendant excepted. The plaintiff then offered an amendment to his petition, alleging that the Southern Railway was the last of a connecting line of carriers, and that it received the corn as in good order. This amendment was allowed, and the defendant demurred to the petition as amended, upon the grounds, that the amendment was not germane to the original petition; that the petition, as amended, set forth no cause of action; and that the amendment added a new cause of action, for the reason that the original petition sets forth a cause of action upon a common-law liability of the defendant to transport the corn within a reasonable time, and the amendment converts the case into an action upon a statutory liability. This demurrer was overruled, and the defendant excepted. The case was submitted to the judge. without the intervention of a jury, and he rendered a judgment in favor of the plaintiff, for the full amount sued for. To this judgment the defendant excepted, upon the grounds, that it was contrary to law, contrary to evidence, and without evidence to support it.

*Charlton E. Battle,* for plaintiff in error.

*J. F. Wall* and *G. W. Bryan,* contra.

COBB, P. J. (After stating the facts.)

1. If the original petition be treated as an attempt to enforce the common-law liability upon the defendant, it was defective, for the reason that it did not definitely allege that the damage resulted from the act of the defendant after it had received the car. If the petition was an attempt to enforce upon the defendant a liability under the statute, on account of its being the last of a connecting line of carriers, the petition was likewise defective, for the reason that it did not allege that the corn was received as in good order by the defendant. But, under the liberal rule laid down in *Ellison* v. *Georgia R. Co.,* 87 *Ga.* 692, which is now a part of the statute law of this State (Civil Code, § 5098), the petition was amendable. It could have been amended by alleging that the damage occurred on the line of the defendant; which would have made it

set forth a good cause of action under the common law. It could have been amended by alleging that the defendant was the last of a line of connecting carriers, and that it received the corn as in good order. The plaintiff offered an amendment of the latter character; and the petition, as amended, set forth a cause of action. The cause of action, in the original petition, was incomplete, but there was enough in the petition to amend by, under the rule laid down in the section of the code above referred to. The amendment did not change or shift the cause of action set forth in the original petition. It merely took that which was in the original petition which was insufficient and defective, and supplied a necessary allegation; and the petition and amendment, when taken in connection with each other, set forth a complete cause of action. In *Exposition Cotton Mills* v. *Western & Atlantic R. Co.;* 83 *Ga.* 441, an examination of the record shows that in the original petition there was a distinct allegation that the damage occurred on the line of the defendant, and therefore there was a complete cause of action upon the common-law liability set forth in the original petition. The amendment sought to convert this into a cause of action arising upon the liability under the statute, and it was held that this could not be done. If, in the present case, the original petition had alleged that the damage occurred upon the line of the defendant, the objection to the amendment, that it added a new cause of action, would have been well taken.

2. The petition alleged that the plaintiff refused to accept the corn, on account of its damaged condition, and that his refusal continued for five days, and finally, on the 8th of April, the agent persuaded him to take the corn, pay the freight, and make his claim for damages. If the defendant company was not liable to the plaintiff on account of the delay in the transportation of the corn, this action of the agent, in persuading him to receive the corn and pay the freight, would not impose a liability, unless it appeared that the agent had authority from the company to assume a liability which did not exist. A station agent of a railroad company has no implied authority to impose a liability upon the railroad company when none in fact exists against it. So that the case at last depends on the question as to whether there was a liability upon the company; and the action of the station agent in reference to the matter becomes immaterial. The collection of the freight

by the station agent would not affect the question, because the consignee was liable for the freight, and the railroad company could have treated the corn, even in its damaged condition, as the property of the consignee, and disposed of it in the manner prescribed by law for the enforcement of its lien for freight.

3. It appeared, from the evidence, that the corn was received by the Kansas City, Memphis & Birmingham Railroad Company, on March 14, 1903; that it was received by the defendant, at Birmingham, on March 29, 1903, at 11 o'clock a. m.; that there was a delay in Birmingham, due to the then congested condition of the yard and the large amount of business to be handled; and that it reached Locust Grove on the 2d or 3d of April, 1903. There was no positive evidence as to the condition of the corn at the time it reached Birmingham. Several witnesses testified as to the length of time required for corn to become heated and to sprout, as had occurred before it reached Locust Grove, the time varying from seven to ten days; one witness testifying that it might occur in seven or eight days, possibly ten days; and other witnesses testifying that it could not occur in less than ten days at that season of the year. The defendant, so far as the record discloses, gave no receipt for the corn at Birmingham, but there would be a presumption that it received it at that point in good order; but this presumption is not conclusive, and the company would be authorized to overcome it by proof. *Southern Ry. Co.* v. *Waters, 125 Ga.* 520. If the corn was in a damaged condition at the time it reached Birmingham, of course its condition would become worse from day to day; but if the defendant transported the car within a reasonable time after it received it, it would not be liable in damages to the plaintiff in the event the damage originated before it received the car. The duty owed by it was to exercise reasonable diligence in the transportation of the car after it was received. According to the testimony, under ordinary conditions four days would be a reasonable time for a car to be transported from Birmingham to Locust Grove. Taking the evidence in its most favorable light for the plaintiff, it would authorize a finding that the car was in transit six days between these points.

It is claimed that the railroad company is not responsible for any consequences that might result from the delay; for the reason that the railroad yards at Birmingham were in such condition that

the car could not have been handled with greater despatch, the freight agent of the defendant at Birmingham having testified that the car "was delayed on account of the large amount of business being handled at that time," and that it was moved as soon as possible after its receipt, and a yard clerk having testified that "the car was moved as soon as practicable, and not moved sooner, as stated, because of the congested condition of the yards." We recognize the rule that a railroad company will not be responsible for delay if the car is transported with as much despatch as possible under the actual circumstances which exist at the time; that is, what would be a reasonable time for the transportation of a car between given points can not be fixed by any invariable rule, but depends, to a large extent, upon the circumstances as they exist at the time that the company attempts to effect the transportation; but a railroad company can not relieve itself from responsibility for delay by simply showing a condition of affairs in regard to its own business which brought about the delay, unless it also appears that the condition of affairs was unprecedented, could not have been foreseen, and therefore was not due to its fault. Mere proof that a car was not promptly transported for the reason that the yards of the company were in such condition that it could not be moved earlier ought not to be allowed as an excuse for delay, unless it is shown that the company was not responsible for the crowded condition of its yards at that time; that is, that a condition of affairs had arisen which was unusual and with which the company could not deal in the usual manner. It is true that in the case of *Smith v. C., C., C. & St. L. Ry. Co.,* 92 *Ga.* 539, the grant of a nonsuit was affirmed upon the simple evidence of the yardmaster that the car could not have been delivered sooner, on account of the crowded condition of the yard. The rule laid down in that case is correct; that is, that the company would not be responsible if they sent the car forward with as much despatch as possible under the actual circumstances which existed at the time. But we think the rule was inaptly applied; and while we follow the rule, we will not follow the erroneous application of the same, unless the case before us is identical in every particular with that in which the law was erroneously applied. The evidence was of such character as to authorize a finding that the railroad company had failed to account for the delay of two days in such a way as to relieve it of responsibility;

and while the evidence as a whole is not altogether satisfactory, we do not feel justified in holding that the judgment is entirely, unsupported by the evidence. The evidence was of such character as to authorize a finding either way, though the preponderance of the evidence seems to be against the judgment. There was some evidence upon which the judgment could be based.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*